**FILED**
October 22, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: NM
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JUAN ANTONIO BALTAZAR MUNOZ,** | § | |
| **Petitioner,** | § | |
| | § | **NO. SA-26-CV-05254-OLG** |
| **v.** | § | |
| **TODD BLANCHE *et al.*,** | § | |
| **Respondents.** | § | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Juan Antonio Baltazar Munoz's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1). Respondents have responded (Dkt. No. 4), and Petitioner has replied (Dkt. No. 5). After careful consideration, the Court will grant the Petition for the reasons below.[1]

---

[1] The Court is aware of the Fifth Circuit's July 21, 2026 Order granting the government's request to "issue a precedential order staying the district courts' judgments pending en banc review" of the panel's now-vacated opinion holding that certain applicants for admission can only be mandatorily detained for 90 days under 8 U.S.C. § 1225(b)(2)(A) without a bond hearing. *Sosnava Rodriguez v. Ortega*, No. 26-50183, Dkt. No. 178-1 at 13 (5th Cir. July 10, 2026); *see Sosnava Rodriguez v. Ortega*, --- F.4th ---, 2026 WL 2104747 (5th Cir. July 21, 2026) (en banc). After careful consideration, the Court finds that the interim stay order does not prohibit its continued resolution of the hundreds of pending immigration habeas petitions on due process grounds.

First, the Fifth Circuit only stayed the three judgments before it on appeal pending its ultimate determination on the merits of the due process issue. *Id.* "Such an order 'does not make or signal any change to the law' and 'is not a ruling on the merits.'" *Estrada v. Ybarra*, No. 26-CV-1897-KC, 2026 WL 2168090, at *1 (W.D. Tex. July 28, 2026) (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) (citation modified)). Second, insofar as the interim stay order is precedential, it "was issued without any explanation [or] analysis whatsoever," making it impossible to determine its meaning and scope. *Estrada*, 2026 WL 2168090, at *1–2; *see also Camacho v. Dep't of Homeland Sec.*, No. 26-CV-01717-DB, 2026 WL 2137156, at *3 (W.D. Tex. July 24, 2026) (declining "to infer directives of constitutional magnitude from the Fifth Circuit where none have been given").

Moreover, prompt resolution is contemplated by the nature of the writ of habeas corpus, which "must not be allowed to founder in a procedural morass." *Harris v. Nelson*, 394 U.S. 286, 291 (1969) (citation modified); *see* 28 U.S.C. § 2243 ("A court . . . entertaining an application for a writ of habeas corpus shall *forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted." (emphasis added)). The notion that district courts must now stay all action across the hundreds of habeas proceedings challenging mandatory detention under § 1225(b)(2)(A) is untenable.

## I. BACKGROUND

Based on the record, Petitioner is a citizen of Mexico who entered the United States without inspection in 2000 and was apprehended and detained by immigration authorities on July 3, 2026. (Dkt. No. 1 at 10; Dkt. No. 4 at 8; Dkt. No. 4-1 at 1.) He was then placed in removal proceedings and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as "an alien present . . . without being admitted or paroled." (Dkt. No. 4-1 at 1.) Petitioner is presently being detained pursuant to 8 U.S.C. § 1225(b)(2)(A) pending the conclusion of his full removal proceedings under § 1229a. He initiated this action on August 14, 2026, seeking an order compelling his release or requiring that he be given a bond hearing, on the grounds that he may not be mandatorily detained consistent with the Immigration and Nationality Act (INA) and his right to due process.[2] (*See* Dkt. No. 1 at 24–28.)

## II. JURISDICTION

District courts have jurisdiction to grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c).

---

As such, the Court will proceed with its resolution of such challenges "until told to do otherwise." *Estrada*, 2026 WL 2168090, at *2 (citation modified) (collecting cases).

[2]Petitioner also asserts entitlement to habeas relief based on the Administrative Procedure Act (APA), the *Accardi* doctrine, the Equal Protection Clause, and the Suspension Clause. (*See* Dkt. No. 1 at 28–35.) These claims—which are unavailing and not properly before the Court in a habeas proceeding—will be dismissed. *See, respectively, Chi v. Warden, Bluebonnet Det. Facility*, No. 26-CV-067-H, 2026 WL 1062625, at *5 (N.D. Tex. Apr. 13, 2026) (explaining that APA claims are only available when "there is no other adequate remedy in a court," and a "request for habeas relief . . . unwittingly admits that there is, in fact, an adequate remedy outside of the APA"); *Ndudzi v. Castro*, No. 20-CV-492-JKP, 2020 WL 3317107, at *2 (W.D. Tex. June 18, 2020) ("The payment of the $5 habeas filing fee relegates this action to habeas relief only."); *Chi*, 2026 WL 1062625, at *6 (explaining that an *Accardi* claim "is inapposite in a petition for habeas relief"); *Chi*, 2026 WL 1062625, at *4 (finding equal-protection based claim unavailing in this context, where "the primary objection to the respondents' detention policy is its over-inclusivity"); *Heredia v. Bondi*, No. 26-CV-1556, 2026 WL 1587132, at *6 (S.D. Tex. Apr. 20, 2026) (dismissing Suspension Clause claim, as "Petitioner's ability to pursue her claims demonstrates that the writ has not been suspended").

The INA does not strip the Court of jurisdiction over the instant challenge to detention. *See, e.g.*, *Perez-Puerta v. Johnson*, No. 25-CV-1476-OLG, Dkt. No. 13 at 2–4 (W.D. Tex. Dec. 15, 2025) (addressing and rejecting the applicability of 8 U.S.C. §§ 1252(g), 1252(b)(9), 1225(b)(4) in context of challenges to mandatory detention). Nor would Petitioner's failure to exhaust administrative remedies, as the exhaustion requirement in the immigration detention context is likely prudential rather than jurisdictional. *Calderon Lopez v. Lyons*, 814 F. Supp. 3d 733, 737 n.1 (N.D. Tex. 2026) (citing 8 U.S.C. § 1252(d)(1)). And "exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018) (citation modified); *see Calderon Lopez*, 814 F. Supp. 3d at 737 n.1 (finding that exhaustion—i.e., an appeal to the BIA—would be "an exercise in futility" and therefore was not required); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 & n.14 (S.D. Tex. 2021) (finding that administrative exhaustion would be futile where constitutional challenge to detention procedures are raised); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 680–81 (W.D. Tex. 2025) (explaining that requiring petitioner to wait for a ruling on an appeal to the BIA would "exacerbate his alleged constitutional injury—detention without a bond hearing"); *Hernandez-Fernandez v. Lyons*, No. 25-CV-773-JKP, 2025 WL 2976923, at *6–7 (W.D. Tex. Oct. 21, 2025) (same).

## III. DISCUSSION

Petitioner challenges his detention under the INA and the Due Process Clause of the Fifth Amendment. As the petitioner, he bears the burden of proving that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)). "[B]ecause the habeas proceeding is civil

in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* at 696–97 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "A court considering a habeas petition must 'determine the facts . . . and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

**A. Statutory Challenge to Application of 8 U.S.C. § 1225(b)**

Petitioner's statutory basis for relief (*see* Dkt. No. 1 at 23–25) has been foreclosed by a divided panel of the Fifth Circuit in *Buenrostro-Mendez v. Bondi* and is therefore dismissed. *See* 166 F.4th 494, 500 (5th Cir. 2026) (holding that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States").

**B. Due Process Challenge to Mandatory Detention**

Petitioner next challenges his detention on constitutional grounds. *See, e.g.*, *Sanchez v. Noem*, No. 25-CV-00403-DCG, 2026 WL 596133, at *8 (W.D. Tex. Mar. 2, 2026) (explaining that the Fifth Circuit's decision in *Buenrostro-Mendez* was limited to the interpretation of § 1225(b)(2)(A) and, thus, "does not control whether Respondents are detaining Petitioner in violation of the Constitution"). He argues that his being mandatorily detained without a bond hearing—to establish whether he poses a risk of flight or a danger to the community—violates his due process rights. (Dkt. No. 1 at 25–28.) The Court agrees.

"Noncitizens are entitled to due process of the law under the Fifth Amendment." *Ochoa v. Vergara*, 821 F. Supp. 3d. 680, 683 (W.D. Tex. 2026) (citing *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025)). "[G]overnment detention violates th[e Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's

constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Accordingly, if Petitioner has a constitutionally protected liberty interest in residing freely within the United States despite his status as an applicant for admission, then Respondents may not detain him during the pendency of his removal proceedings—notwithstanding the applicable mandatory detention provision in § 1225(b)—unless Respondents' "special justification" for doing so "outweighs" his liberty interest. *See id.*

Petitioner has a constitutionally protected liberty interest in residing freely within the United States during the pendency of his full removal proceedings because he has lived here for over 25 years, during which he has developed substantial ties to the community. *See Sanchez*, 2026 WL 596133, at *12 ("Civil detainees possess a cognizable interest in their physical freedom during the pendency of their removal proceedings and a substantial liberty interest in not being confined unnecessarily." (citation modified)); *Martinez v. Noem*, No. 25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025); *Gomez Hernandez v. ICE Field Off. Director*, No. 26-CV-67-KC, 2026 WL 503958, at *1 (W.D. Tex. Feb. 23, 2026); *Clemente Ceballos v. Garite*, No. 26-CV-312-DB, 2026 WL 446509, at *2 (W.D. Tex. Feb. 10, 2026); *cf. Marceau v. Noem*, No. 26-CV-237-KC, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("[A] person may obtain a liberty interest through their presence in the country, particularly where that presence is with the express permission of the Government." (citing *Lopez-Arevelo*, 801 F. Supp. 3d at 685–86)). And his "interest in being free from imprisonment" is "the most significant liberty interest there is." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d. 782, 798 (S.D. Tex. 2026) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Indeed, "liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause." *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). Thus, not only does this factor clearly weigh in Petitioner's favor, but it "deserves great weight

and gravity." *Ochoa*, 821 F. Supp. 3d. at 683 (quoting *Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 701 (W.D. Tex. 2025)). Accordingly, Respondents' "special justification" must "outweigh" Petitioner's very weighty liberty interest. *See Zadvydas*, 533 U.S. at 690.

Although the Government has a general interest in enforcing immigration laws, the INA is subservient to the Constitution's protections. *See, e.g.*, *Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892) ("Legislation cannot detract from the privilege afforded by the constitution"), *overruled on other grounds by Kastigar v. United States*, 406 U.S. 441 (1972). Of course, "the Government has an interest in detaining noncitizens who pose a flight risk or a danger to the community." *Bonilla Chicas*, 821 F. Supp. 3d. at 798. But if Petitioner poses neither, then restoring his liberty during the pendency of his removal proceedings would in no way diminish the Government's "power to admit or exclude aliens." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). And yet, § 1225(b)'s mandatory detention provision requires that Petitioner—and, indeed, all applicants for admission—be detained irrespective of whether he poses a danger or flight risk. The Court recognizes that some applicants for admission may present such risks, and, in those cases, the mandatory detention provision would have correctly resulted in their detention throughout removal proceedings. But mandatorily detaining *every* applicant for admission—including Petitioner—without any hearing or other individualized assessment of whether they pose any risk that would outweigh their liberty interest creates "a very high risk of erroneous deprivation of liberty." *Bonilla Chicas*, 821 F. Supp. 3d. at 798.

"It is critically important to recognize Petitioner is in full removal proceedings, with presumably some immigration relief available to him." *Vieira*, 806 F. Supp. 3d at 699. And because those proceedings are ongoing, the choice "is not between imprisonment and [Petitioner's] 'living at large'"—"it is between imprisonment and supervision under release conditions that may not be

violated." *Id.* (quoting *Zadvydas*, 533 U.S. at 696 (citation modified)). As such, the Court finds that Petitioner is entitled to relief on due process grounds.[3]

However, courts are split on the appropriate remedy for the violation in this context, where Petitioner had never previously been paroled or released into the United States and was only recently encountered by ICE and detained pursuant to § 1225(b)(2)(A). Many courts have ordered immediate release, *see, e.g.*, *Ochoa*, 821 F. Supp. 3d. at 686 (granting immediate release and prohibiting re-detention "without first conducting a bond hearing") (collecting cases), while others have found that, even after *Buenrostro-Mendez*, the appropriate remedy is a bond hearing before an immigration judge, *see, e.g.*, *Gomez Hernandez*, 2026 WL 503958, at *2 (finding that a bond hearing was the appropriate remedy and that "*Buenrostro-Mendez* [would] not change the Court's analysis"). Here, because there has been no initial determination regarding Petitioner's risk of flight or danger to the community, the Court finds that the appropriate remedy in such circumstances is a bond hearing, during which the immigration judge will determine whether bond is appropriate and, if so, what conditions are suitable for release. *See, e.g.*, 8 C.F.R. §§ 212.5(b) (permitting parole only if the alien presents "neither a security risk nor a risk of absconding"), 241.4(e) (permitting discretionary release only if the alien "is not likely to pose a threat to the community" and "does not pose a significant flight risk").

[3] *See Sanchez*, 2026 WL 596133, at *8 (granting relief, post-*Buenrostro-Mendez*, in habeas case brought by petitioner who had "lived in the United States since 1996, during which time he became a father to four children and the sole breadwinner for his family," and was arrested and mandatorily detained for the first time in 2025); *Martinez*, 2025 WL 2965859, at *4 (same, where the petitioner had "been living in this country for twenty-two years" and "established a family and a community here"); *Gomez Hernandez*, 2026 WL 503958, at *1, 3 (finding procedural due process violation in habeas case brought by petitioner who began living in the United States in 2022 and was apprehended and detained by ICE for the first time in 2026); *Clemente Ceballos*, 2026 WL 446509, at *1–2 (finding due process violation as applied to alien who entered without inspection in 2004 and had never been paroled or otherwise released into the country by DHS prior to his first encounter with, and resulting detention by, ICE in 2026).

## IV. CONCLUSION

Based on the foregoing, Petitioner Juan Antonio Baltazar Munoz's Petition for Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED** as follows:

1. Respondents must provide Petitioner Juan Antonio Baltazar Munoz (A-240-732-261) with a bond hearing to determine whether he poses a danger or flight risk, or otherwise release him under appropriate conditions on or before **Thursday, November 5, 2026**;

2. **Respondents must provide Petitioner's counsel adequate notice of the date and time of the bond hearing.** If Petitioner is released, Respondents must notify Petitioner's counsel of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before release**; and

3. Respondents must file a status report **within two days thereafter** confirming that Petitioner has been given a bond hearing or otherwise released under appropriate conditions.

Finally, Petitioner's non-habeas claims are **DISMISSED WITHOUT PREJUDICE**.

This Order is a **FINAL JUDGMENT**, and the Clerk is directed to **CLOSE** this case upon its entry.

It is so **ORDERED**.

**SIGNED** on October 22, 2026.

ORLANDO L. GARCIA
United States District Judge